**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**


DEBORAH ANDERSON                                                                      PLAINTIFF


v.                                        4:04CV000733 JMM/JTR


JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                              DEFENDANT


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody. The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection. An original and one copy of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these findings and recommendations in whole or in part.

### ANALYSIS AND DISPOSITION

Plaintiff, Deborah Anderson, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB"). Both parties have submitted appeal briefs, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by "substantial evidence on the record as a whole" and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996), the Eighth Circuit has made it clear that "substantial evidence on the record as a whole" requires a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged disability[1] based on a steel plate in her right hip and low back pain. (Tr. 99.) After conducting an administrative hearing, the Administrative Law Judge[2] ("ALJ") concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through February 27, 2004, the date of his decision. (Tr. 343-344.) On June 1, 2004, the Appeals Council declined to accept jurisdiction, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 254-255.) Plaintiff then filed her Complaint (docket entry #2) initiating this appeal.

Plaintiff was 48 years old at the time of the August 5, 2003 supplemental hearing.[3] (Tr. 88, 398-440.) She is a high school graduate (Tr. 105, 403), with some additional vocational training. (Tr. 105, 336.) She has past relevant work as a dispatcher, driver, certified nursing assistant, cashier and pipe fitter/plumber. (Tr. 100, 210, 336, 385.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*

---

[1] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] The Hon. Mark S. Anderson.

[3] On January 21, 2003, the Court remanded this case to the Commissioner for further development of the record regarding Plaintiff's depression and post-traumatic stress disorder. (Tr. 350-357.)

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. *Id.*

If claimant does not meet or equal a Listing, then a residual functional capacity ("RFC") assessment is made based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to perform other work available in the national economy, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) was last insured on December 31, 2003,[4] and had not engaged in substantial gainful activity since her alleged onset of disability (Tr. 342); (2) had a "severe" combination of impairments (Tr. 337), including a history of diagnosis and/or treatment for dysplasia of the right hip, early osteoarthritis, depression (not otherwise specified), and posttraumatic stress disorder, but that she did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 342); (3) was not totally credible regarding the extent of her symptoms, limitations, and restrictions (Tr. 343); (4) retained the RFC for sedentary work (*id.*); and (5) was unable to perform any of her past relevant work. At step 5, the ALJ used the Medical-Vocational

---

[4]In order to receive DIB, an applicant must establish that she was disabled before the expiration of her insured status. 42 U.S.C. §§ 416(i), 423(c) (1991); *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998); *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir. 1990).

Guidelines and, after considering Plaintiff's vocational profile and RFC, the ALJ concluded that Rule 201.21, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, directed a finding that Plaintiff was not disabled. (Tr. 343.)

In Plaintiff's Appeal Brief (docket entry #8), she argues that the ALJ erred: (1) in using the Medical-Vocational Guidelines to determine that she was not disabled, rather than relying on the testimony of a vocational expert; and (2) in analyzing her credibility. The Court will address each of these arguments separately.

First, Plaintiff contends that, because she suffered from nonexertional impairments, the ALJ should have called a vocational expert, rather than relying on the Medical-Vocational Guidelines. (*Pltf's. App. Br.* at 16-18.) In *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993), the Court recognized that, under appropriate circumstances, an ALJ may rely on the guidelines to direct a finding of "not disabled" even though the claimant has nonexertional impairments:

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled." *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). Instead, testimony of a vocational expert must be taken. *Groeper*, 932 F.2d at 1235. The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines. *Thompson*, 850 F.2d at 349-350 (emphasis added).

(Emphasis in original.) *Accord, McGeorge v. Barnhart*, 321 F.3d 766, 768-69 (8th Cir. 2003); *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001); *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999).

In support of her argument, Plaintiff cites the report of Dr. Marianna Pardue, which describes Plaintiff's mental impairments, and contends that the ALJ should have given it greater weight than the report of Judy White Johnson, Ph.D. (*Pltf.'s App. Br.* at 18.) Dr. Pardue evaluated Plaintiff in

May of 2000, and made an Axis I diagnosis of depression, not otherwise specified, and posttraumatic stress disorder. (Tr. 207-209, 212-213.) However, a fair reading of Dr. Pardue's report reveals that, in reaching those conclusions, she relied on Plaintiff's recitation of her medical history. (Tr. 207-208.) The record reveals that Plaintiff sometimes gave inconsistent versions of her medical history to different examiners.[5]

On May 7, 2003, Dr. Johnson administered a battery of psychological tests to Plaintiff. (Tr. 384-389.) During the administration of these tests, Plaintiff advised Dr. Johnson that, other than a one-night stay in the State Hospital 20 years ago, she had had no other contact with mental health providers except for "seeing someone at Little Rock Community Mental Health Center last week to see if they could help her get her disability." (Tr. 385.) While she stated that she had another appointment scheduled at Little Rock Community Mental Health Center for May 15, 2003, she went on to indicate that she "probably won't be keeping it." Finally, Plaintiff told Dr. Johnson that she had been arrested for public nuisance, possession of drug paraphernalia, and "many times" for gambling. Finally, she admitted that she "smokes marijuana daily." (Tr. 385-386.)

Dr. Johnson, in describing the results of Plaintiff's MMPI-2, stated the following:

> The validity scales of the MMPI-2 indicate that she is highly defensive, attempts to manipulate others with her symptoms, has extreme denial, and strives to present herself as highly virtuous, fault-free, and exaggeration of symptoms.
>
> The pattern of her clinical profile indicates that she responded to the questions in a manner consistent with attempting to manipulate test outcome and produced a profile that is associated with malingering or carelessness.

(Tr. 387.) Finally, Dr. Johnson completed a "Medical Source Statement of Ability to Do Work-

---

[5]For example, she told Dr. Pardue that she "occasionally" used marijuana to calm herself down. (Tr. 208.) She told Dr. Johnson that she smoked marijuana daily. (Tr. 385.) She told Dr. Johnson that, twenty years earlier, she had spent the night in the State Hospital after becoming angry at her first girlfriend for leaving her. (Tr. 385.) However, she told Dr. Pardue that she had never been hospitalized for any mental problems. (Tr. 207.)

Related Activities (Mental)" in which she noted *no mental restrictions* on Plaintiff's ability to work.[6] (Tr. 390-391.)

In reaching his decision, the ALJ considered both the opinion of Dr. Pardue and the opinion of Dr. Johnson (Tr. 338-339), but ultimately concluded that Plaintiff's mental limitations were not "severe." (Tr. 339.) While it is clear that the ALJ relied heavily on Dr. Johnson's opinion regarding Plaintiff's mental restrictions, the trier of fact has the duty to resolve conflicting medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The record firmly supports the ALJ's finding that Plaintiff had no nonexertional impairment that significantly affected her RFC to perform a full range of sedentary work activities. Thus, the Court concludes that the ALJ was justified in using the Medical-Vocational Guidelines to direct a finding that Plaintiff was not disabled.

Second, Plaintiff takes issue with the ALJ's analysis of her credibility. (*Pltf.'s App. Br.* at 17.) The ALJ evaluated Plaintiff's subjective complaints (Tr. 340-341) in accordance with the following factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984):

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> > 1. the claimant's daily activities;
> >
> > 2. the duration, frequency and intensity of the pain;
> >
> > 3. precipitating and aggravating factors;
> >
> > 4. dosage, effectiveness and side effects of   medication;
> >
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

---

[6]During the administrative hearing, Plaintiff testified that, in 2002, she was seen by a psychiatrist named "Walls," who told her that there was nothing wrong with her. (Tr. 421.)

Specifically, Plaintiff contends that the ALJ erred in not considering: (1) her strong work record; (2) the fact that her medications were not entirely effective and had side effects; and (3) a witness statement by her sister. (*Pltf.'s App. Br.* at 17.) However, the Eighth Circuit has recognized that an ALJ's failure to analyze subjective complaints in light of every consideration dictated by *Polaski* is not necessarily reversible error. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999) (even though not considered, past relevant work only one of many considerations upon which ALJ could discount subjective complaints).

There is little objective support in the record for Plaintiff's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994). Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of her allegations, the lack of more regular treatment, her daily activities, her functional capabilities, and the lack of greater restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints.[7] *See Thomas v. Sullivan*, 928 F.2d 255, 259-60 (8th Cir. 1991); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989).

Plaintiff alleged an onset of disability of December 30, 1998. (Tr. 88, 99.) On April 15, 1999, she underwent a general physical examination. (Tr. 145-151.) She exhibited a full range of motion in the spine and all extremities except for her right hip, and there was no heat and no swelling. (Tr. 147-148.) This physical examination also revealed that Plaintiff was neurologically intact, with no muscle weakness or atrophy and no sensory abnormalities. (Tr. 148.) The examining physician thought Plaintiff should avoid standing or walking for long periods and avoid heavy lifting. (Tr. 151.) Test results in September of 1999 revealed that Plaintiff's range of motion was very similar to what it was in April. (Tr. 164-165.)

---

[7]Of course, Plaintiff's admitted daily drug use also does not enhance her credibility. (Tr. 385-386.)

In January of 2000, a physical examination revealed that Plaintiff was alert, oriented and cooperative and in no apparent distress. (Tr. 206.) She was neurologically intact, with good motor functioning throughout the extremities, and there was no obvious motor or sensory deficit and no atrophy. *Id.*

Finally, there is evidence that Plaintiff worked both full-time and part-time in 2002. (Tr. 385, 404.) Plaintiff's work activity during the period that she alleges disability supports the ALJ's conclusion that she was not disabled. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (seeking work and working while applying for benefits inconsistent with complaints of disabling pain); *Ostronski v. Chater*, 94 F.3d 413, 418 (return to past work undercuts complaints of inability to perform any work); *Roe v. Chater*, 92 F.3d 672, 677 (8th Cir. 1996) (actual activities, including work, incongruous with contention that cannot work); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (work activity belies claim of disabling pain); *Cruze v. Chater*, 85 F.3d 1320, 1324 (8th Cir. 1996) (active lifestyle and performance of odd jobs tend to prove claimant can work); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (wide range of activities, including working two days a week, supports finding of no disability); *Bentley v. Chater*, 52 F.3d 784, 786 (8th Cir. 1995) (seeking work incompatible with disability); *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994) (intention to work tends to prove ability to work); *Starr v. Sullivan*, 981 F.2d 1006, 1008 n.3 (8th Cir. 1992) (even though not substantial gainful activity, work activity determinative of capacity for work); *Thompson v. Sullivan*, 878 F.2d 1108, 1110 (8th Cir. 1989) (any work during claimed disability may show capacity for substantial gainful activity).

Thus, the Court concludes that the ALJ's credibility analysis was proper. He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. (Tr. 340-341.) *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).

After reviewing the record as a whole, the Court concludes that it contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this

case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 14th day of July, 2005.

_____
UNITED STATES MAGISTRATE JUDGE